The next case today is Rhonda Ovist v. Unum Life Insurance Co. of America et al. Appeal No. 201464. Attorney Feigenbaum, you may please introduce yourself on the record. Good afternoon again. May it please the court, Jonathan Feigenbaum for Rhonda Ovist. May I reserve two minutes of my time for rebuttal, Your Honor? Yes, you may. Thank you. In this case, Unum agrees that Professor Ovist was diagnosed with fibromyalgia and Unum conceded she was occupationally impaired. In fact, in the final adverse benefit determination letter, Unum wrote, quote, We do not refute that Ms. Ovist is unable to work. That's at page 378 of the record. Counsel, we've read the briefs. We know the move on. I'd like to begin my arguments focusing on why this circuit should follow Weisenkamp and Chronister and, time permitting, address the burden-shifting arguments. This court should resolve the case in favor of Professor Ovist and follow both Weisenkamp and Chronister. Here's why. In both of those cases, Unum was the defendant. In both of those cases, Unum had discretion to was fibromyalgia. In both of those cases, the plans contained a self-reported symptoms limitation clause that is identical. In both of those cases, the Seventh Circuit and Eighth Circuit held that fibromyalgia is verifiable by clinical examination, standardly accepted in the practice of medicine, and that exam is the trigger point testing. In both of the cases, the plan participants proved functional loss. So did Professor Ovist. In addition to providing what I would call copious medical history as to her functional limitations, Professor Ovist delivered to Unum, with her appeal, cardiopulmonary exercise testing, CPET testing. And that testing will say documented with data her functional limitations. So the central issue that this court needs to resolve is whether the self-reported symptoms clause relates to diagnosis or to symptoms. In both Weisenkamp and Chronister, the Seventh and Eighth Circuit held that the clause applies to diagnosis and not disabling symptoms because of way the clause is written, and principally because fibromyalgia is diagnosed by trigger point testing, and this qualifies as a clinical examination, standardly accepted in the practice of medicine. So to avoid the holding of Weisenkamp in this case, Unum is raising two inconsistent arguments, for the most part, for the first time on appeal. First, Unum, in its brief, concedes the case is about functional loss, and this follows along the First Circuit cases, beginning with Boardman, which essentially holds that for certain conditions, medical conditions, and a planned fiduciary cannot demand what we'll call laboratory-type testing, but can demand objective proof of loss of functionality. So what I'd say is so far so good. But then when Unum has to address the two-day CPET testing that Professor Ovitz provided that documented her functional losses, Unum really changes its tune. At page 34 of its brief, Unum wrote, quote, not one of Ms. Ovitz's treating physicians cited the CPET as an objective evidence of her diagnoses. So what I take from that is Unum is saying that the way the clause reads is that it entails diagnosis, and it also entails functional loss. And as the Seventh and Eighth Circuit held, the way the clause needs to be read in connection with at least a fibromyalgia-based claim, it only goes to diagnosis. So if the impairing symptoms are pain, the claim is outside the clause. Other points I'd like to make relating to the CPET test is in some sense it does provide objective verification of the diagnosis. It's not directly on point like a laboratory test, but it is some type of data point providing additional information beyond what the patient reports or what the physicians observe or any of other health care providers. So I'm suggesting to the court that Unum's interpretation was not reasonable. It's an abuse of discretion. And one way to measure an abuse of discretion can be substantive or procedural. Interpreting a plan in different ways, depending on the facts, particularly when you have circuit courts going against the preferred reasoning for one of the of an abuse of discretion. Chronister was decided in 2006, Weizenkamp in 2011. If Unum didn't like the way that the courts were interpreting the plan, Unum could have amended the plan, for example, the one that was sold to Rollins College. And I would say to this Unum has been on notice as to what the correct interpretation of that particular language means. And the Seventh Circuit was particularly troubled about Unum's purported interpretation, because literally read and the circuit reached the conclusion that the language didn't mean that, was that any pain condition, including things that are just obviously painful and debilitating, would allow Unum to impose this limitation and cut off benefits after 24 months. So the Seventh Circuit rejected that position, which actually Unum admitted to in oral argument. It's documented in the court's opinion. So moving to the second issue, Your Department of Labor will speak more about. I'm suggesting that this court should tackle the issue as to the burden shifting, and I propose the following. In an ERISA litigation, where the plan has an exclusion or limitation, the ERISA plan should bear the burden of proof by a preponderance of the credible evidence when imposing a limitation on a participant who otherwise qualifies for benefits absent the limitation. Excuse me, Mr. Feigenbaum. I have two questions. Answer them in whichever order you prefer. My first question is, why should we go near the burden of proof issue? The facts are not really disputed in this case. It's a question of what those facts add up to. Do those facts add up to a condition that does or does not fall within the limitation of the policy? That's simply a question of interpreting the limitation clause. It's not a question, as I see it, of burden of proof. My second question is, if we were to adopt the proposed definition that you just read, my knowledge of insurance policies, which is not the number of clauses, covenants, sentences, and the like in the typical insurance policy that could, particularly by an artful lawyer, be characterized as limitations. I wonder just what kind of Pandora's jar we're opening up if we bought into that definition. Your Honor, to answer your first question, I think the case can be resolved by adopting Wiesenkamp and Chronister, and that the evidence is actually overwhelming, given that Unum conceded she had fibromyalgia and Unum conceded she couldn't work. If we think Wiesenkamp is wrongly decided, the case can also be decided without it going to the burden of proof. That's my whole point, that this is simply a question of measuring what everyone agrees are the symptoms, the loss of function, the results of this 18-point testing, and measuring that against the policy language and coming out yay or nay. So I'm struggling with the notion, and have been getting the Secretary's brief, as to why we should wade into this burden of proof issue gratuitously. May I answer, Your Honor? Sure. Sure. So two reasons. One, Unum's position is, under the planned terms, it's a limitation, and somehow Professor Ovitz had to prove what I'd call a negative proposition, that she has to show that she doesn't fall under this limitation. These limitations and exclusions show up in these plans, and I understand the Serbonian bog quagmire that you're suggesting might develop because of traditional insurance law, but these plans contain exclusions and limitations. The district courts have wrestled with it. I argued this for the first time in a case, Gent v. CUNA, and the panel decided, actually, I think Judge Della, you were on the panel, decided that would pass on it, and it's come up three other times. Well, you have to credit for consistency then, right? Okay. Your Honor, I see district courts on occasion saying- You left me out too. I've passed on the question because I thought it was an extremely hard question not to be reached unless necessary. Your Honor, you passed on it twice in Dukovic and- You bet. Well, for example, if we go to Arruda, Judge Woodlock raised it and said, hey, this is a thorny issue. How do we resolve this? I'm suggesting that the First Circuit provide some level of clarity to the district courts. You may not like the clarity we provide if we were to get there. Anyway, what's wrong with the Supreme Court providing some clarity? It's never wrong, Your Honor. All right. Anything else? No. I think Mr. Toomey said I've gone over my time, so I'll wait. Thank you very much. Thank you. Mr. Feigenbaum, you can mute your device at this time. Attorney Hamilton, if you could unmute your device. And please introduce yourself on the record again, please. Thank you, Mr. Toomey. Good afternoon, Your Honor. This is Joseph Hamilton for the appellees, Unum Life Insurance Company of America and Unum Group. I'll jump right into the Weitzenkamp issue, if you will, Your Honor. I think to get there, it's important to emphasize that Ms. Ovis' disability arose from three conditions, chronic fatigue syndrome, depression, and fibromyalgia. When you review the record, you will see that during the administration of the claim, the primary condition being set forth by her physicians was a chronic fatigue syndrome with the fibromyalgia being a secondary diagnosis. Then in 2012, the major depression became a factor as well. Now, in the last 20 years, this court has addressed all three of those conditions numerous times in the context of mental illness. As far as mental illness goes, Ms. Ovis' psychologist did file a report saying she was unable to work at all due to major depression, and that would be within the limitation provision. That's been addressed a couple of times by the court, Gantt in 2010, and Dukovic has been mentioned as well in 2015, both upholding the limitation provision for mental illness disability. With regard to the chronic fatigue syndrome and the fibromyalgia, this court has addressed that as well. I think the Weizenkamp case, as well as Ms. Ovis' case, tying her case to that decision is contrary to the direction given by this court going back to 2003. The decisions, and there are multiple ones, have all said that chronic fatigue syndrome and fibromyalgia do not lend themselves to objective clinical findings. But have we ever said that in a case in which this 18-point testing has been proffered as a proof that there is some test for fibromyalgia? Here's how it came up, Judge. In the Denmark case, which I believe you wrote the opinion in 2007, the court noted in two, well, more than once in the decision has noted that Ms. Denmark was found to have a positive trigger point test. Despite that, I think Mr. Fagenbaum said he represented Ms. Denmark in that case. Ms. Denmark argued in that case that it was unreasonable to require her to produce objective evidence of her inability to work. That's with the existence of the 18-point trigger test. This court had that information in front of it. Ms. Denmark had that information. Neither in that case or in any of the other cases that this court has decided has that been found to be an objective indication of fibromyalgia. In fact, in Denmark, this court held that fibromyalgia, along with chronic fatigue syndrome, are conditions that are not subject to objective verification because it is a condition lacking abnormalities in blood testing or specific abnormalities in physical exam. The conundrum has always been that, yes, you can touch these various points and say, does that hurt? Does that not hurt? The patient can respond, but at the end of the day, you are relying completely on their self-report, which when you look at the provision of the plan, Your Honor, it states that the manifestations of the condition, that is the pain, the fatigue, has to be verified by a series of tests, diagnostic, clinical examinations, etc. So, while this trigger point test, which really is being de-emphasized by the American College of Rheumatology, is used, that does not make it a clinical examination that verifies because, as this court has repeatedly found, you can't verify it. So, ERISA plans have gone forward since 2003 and, in fact, administered these claims in exactly the way that this court has instructed to do, to say, we know there is not objective evidence clinically on these things, so we have to rely on one of the functional limitations. So, do you do it differently depending on where the claimant lives? Do you apply the SRS limitation in a different way depending on where the insured happens to reside? Well, I can't speak for the company nationally, Your Honor. My understanding is no, unless there was a direct, such as Weissenkamp, if it went before that court, we would be required to do, unless we could convince the court to overturn that decision. So, now claimants insured by UNUM in different parts of the country face an inconsistent application of that limitation, right? Yes, I would say the majority of decisions, Your Honor, apply it exactly the way that we do, and that Weissenkamp is the outlier. It's not the norm, and the reason for it, that Weissenkamp is the outlier, is that it has taken this position that's contrary to what most other courts have found, is that this one single test is not a verification of the condition. Because what we then are left with is, tomorrow, anyone that alleges they have fibromyalgia can go in, get this one clinical examination, then file a claim and say, okay, I have this diagnosis based upon these 18 points. My doctor says I can't work based upon that. Case is over, and we're basically back to where we were before 2003, in which I think everyone has agreed that this is not a condition. Rheumatologists have been struggling with this for 20 years, and the current view based upon the American College is, it's a pain index, it's a rule out other conditions, how long have you had it? So it's this diagnosis by exclusion, and that's specifically what this provision is meant to do. But there is still, Judge LaPlante has put his finger on inequity, because what you've created is a situation where if Mr. Feigenbaum had decided to file his case in the Northern District of Illinois rather than in the District of Maine, his client would probably be entitled to this coverage. We had a venue discussion in this case, Your Honor, we probably would have had one then. My position, Your Honor, is that just because the Seventh Circuit, in our view, has made an error, does not mean that this circuit should just go along with it, simply for that reason. That's probably true, but wouldn't it make more sense in view of the Seventh Circuit decision, and the Eighth Circuit decision, simply for UNUM to clarify the policy language a little? Do we have to exclude this trigger point testing? Yes, Your Honor, that's always the point made by claimants, is that if you don't specify, and you could have, that somehow the plan is deficient. The problem is, once you specify one, and you haven't specified others, now you say, well, you specified that one, but you didn't specify this one, and it becomes a real problem. The standard here is whether or not the company has made a reasonable reading, a reasonable interpretation of the plan. The discretionary language in the plan specifically grants to UNUM Life the authority to interpret the plan limitation. Every district court in this circuit that has looked at this has upheld the interpretation that was made in this case, so it's not as if, and those go before and after Weissenkamp, so it is not as if this position has been applied without some support, not only within this circuit, but within others. So, I would strongly request that this court, and I feel it is somehow bound by Weissenkamp, which we think is an inappropriate decision. If Mrs. Ovist had filed in her circuit in Florida, rather than coming up to Massachusetts, the law is similar there as it is here. She didn't choose to go to Wisconsin. She chose to come here to Massachusetts. We think the guidance that this court has given since 2003 as to how to treat these conditions is the way to go. The last thing I would say is not until this appeal has been filed has fibromyalgia become the headliner in terms of the reason for the disability. The mental illness has been there since 2012. The chronic fatigue syndrome has been there since day one. Counsel, you have now circled back to your opening argument. All right. Thank you very much. Thank you, Your Honors. Attorney Hamilton, at this time, if you could mute your device. Attorney Liu, if you could introduce yourself on the record. May it please the court, Katrina Liu for the Secretary of Labor as amicus curiae. As you know, the Secretary is here to weigh in on the question of burden shifting for limitations, and the Secretary's position is that the burden should rest with the plan. Now, Judge Lynch, you are absolutely correct that this is not an easy question. So, the Secretary's role here is to assist the court. I want to address the question— Why doesn't the Secretary go to Congress if it wants a nationwide rule rather than making arguments to individual courts of appeals? Yeah. So, the question of how to assign the burden is really a judicial function. It doesn't have to be. Congress can easily specify it, or you could ask the Supreme Court to take a case and come up with a national judicial rule. But to the extent people are worried about lack of uniformity, it seems to me you're inviting even more of it. Yeah. So, the Secretary's powers essentially are— So, the Secretary doesn't legislate, and the relationship with Congress is not— It is not typically our position to propose some rule for uniformity. Generally, the way ERISA is implemented is that there is a body of federal common law that develops under the statute that Congress did enact, and it is this And so, the Secretary's role here is to ensure that this enforcement of these ERISA plans is one that's taking place uniformly, because one of the benefits of ERISA, particularly for employers and plants, is that certainty of that uniformity. But even the Secretary would agree, I would think, that the federal courts should not reach out to decide issues gratuitously, that is, to decide issues when it is unnecessary to decide that issue to resolve a particular case. Yeah. So, I wanted to answer this question of yours, Joselia. And so, to be clear, the Secretary has no position on whether this court must decide the burden of proof issue in this case. That is important in terms of the development of the law and the direction you'd like to see it develop. But my concern, frankly, isn't whether your position is right or wrong. My concern is with judicial restraint, with whether this court should plunge ahead at the Secretary's request and decide an issue that we don't have to decide in order to resolve the case in controversy that is before us. So, specifically to this case, that so the Secretary, again, takes no position on whether the court has to. But the burden in this specific case, it may matter, it may not. So, the district, what we know, though, is that the district court made an explicit ruling that the burden to prove the SRS limitation rested on OVIST. Pardon me. So, is your fallback position that even if the Court of Appeals finds we don't have to decide the issue, that we should vacate the district court ruling on that point? Is that your fallback position? Your Honor, if this court vacates, it should articulate the proper legal rule for the district court to apply. No, no, no, no, no, no. That's not the question I asked you. Why would we refrain from... You're assuming that we want the question answered. I don't recall your brief saying even if you don't answer the question, you should tell the district court the question is still open. I see. Five minutes remaining. Yeah, Your Honor, the Secretary has no position on what the court must do if it does not decide this question. And so, if it does decide the question, though, the remedy then would be to articulate the proper legal framework for burden shifting and then to remand to the district court to determine in the burden shift impacts the case. And so, I also wanted to address Judge Selia's second question, which was the idea that depending on how we assign the burden, this could open up a Pandora's box. And it could end up in a lot of confusion for plans and for participants and understanding who has to prove what and what a provision actually is. So, that confusion already exists. We have a split among district courts, some that assign the burden to the participant, some to the plans. Pardon me, but I'm not sure you quite grasp the insurance policies have a lot of different terms. There is a coverage provision that may be subject to limitations but still considered part of coverage. Then there are exclusions. Then there are endorsements. I just decided an environmental insurance case where some endorsements are labeled limitations on coverage that is granted. Some endorsements are labeled exclusions and none of them are contained in the basic policy. So, the Pandora's box that Judge Selia is talking about is very real. Not only is it a Pandora's box for ERISA cases, but it's a law of insurance. And different states have different common laws of insurance. Okay, Your Honor. Yes, you're right. And I believe the case you're referencing is performance transportation. So, okay, I understand the question now. The issue when reading plan terms of whether that term is a term of coverage or an exclusionary term or an endorsement, this would be a task for courts that would not be new regardless of how this court decides on the burden issue. So, plans can be written in many different ways. And the court's role then is to interpret the plan provision to determine whether it is a term of coverage. And if it is a term of coverage, the participant bears the burden of proving she's entitled to coverage. Yes, and your position in this case appears to be that a policy that labels this as a coverage term of the policy, nonetheless, because it contains a limitation, is not a coverage term. Correct? Your Honor, the Secretary's position is that a limitation is its own type. Right. Regardless of where in the policy it is and regardless of how the agreed upon language of the policy characterizes it. That's correct. It is a, yes. And we see a provision as a term of coverage or an exclusion, depending on how that term functions. It's not as easy as that, counsel, because a coverage term, depending on how it's written, may contain within it limitations. Because coverage terms have very specific definitions and have exceptions within those definitions, which a lawyer could very easily and probably understandably characterize as limitations. And I think what both Judge Lynch and I are suggesting to you is that we regard this burden of proof problem, particularly using the definition of the proposed language that Mr. Feigenbaum gave us during his argument, as considerably more labor-related. Certainly, there are difficult, close cases where it's difficult to distinguish between a term of coverage or a limitation or an exclusion. That is not a test that the court need address here, because it is undisputed that the SRS limitation is a limitation. The question, though, is whether you treat it like a term of coverage in that the participant needs to bear the burden or treat it like an exclusion in which the plan must bear the burden. Okay. We've got the argument. Thank you very much. Thank you. Attorney Lew, you may mute your audio and video at this time. Attorney Feigenbaum, you have two minutes. Please reintroduce yourself to the record. Jonathan Feigenbaum again for the appellant Rhonda Ovitz. A few quick comments I'd like to make. My colleague, Mr. Hamilton, seemed to be insinuating at some level that one of the concerns of the planned fiduciary about these self-reported symptoms-based claims is that some of the claims are fake. Maybe. Maybe in some instances, but not this case. As I would like to remind the court, Unum had three of its doctors admit or concede that Professor Ovitz had fibromyalgia. In its final adverse benefit determination, Unum conceded she couldn't work. So, any issues of sneaky behavior or phony claims just aren't based in reality on this claim. The other point I'd like to make is looking at the self-reported symptoms language, what it excludes is claims that are not verifiable using test procedures or, quote, clinical examinations standardly accepted in the practice of medicine. And as I've repeated, as the Seventh Circuit found, the Eighth Circuit found, trigger point testing is a clinical standard exam. There's other well-known illnesses, Alzheimer's. You really can't diagnose that until after someone's dead and you look at their brain under a microscope. Same kind of thing for chronic traumatic encephalopathy. Can't really make a definitive diagnosis until after death. But those are types of medical conditions that I on and name a number of other ones. But the point is that Unum's language uses this term clinical examination standardly accepted in the practice of medicine. And that does not mean that the claimant has to show a laboratory-type test for some condition for which there is none. That's time. Thank you. Thank you all. Thank you. That concludes the arguments for today. This session of the Honorable United States Court of Appeals is now recessed until the next session of the court. God save the United States of America and this honorable court. Counsel, you may disconnect from the meeting.